## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

JOSHUA THOMAS EARL WILLIAMS, SR.                    PLAINTIFF

v.                                                   No. 4:13CV4-MPM-JMV

THOMAS TOWNSEND                                      DEFENDANT

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Joshua Thomas Earl Williams who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The defendants have moved [29] for summary judgment. Williams has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the defendant's motion [29] for summary judgment will be granted and judgment entered for the defendant.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc.,

477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts

According to his medical records, Joshua Williams sought medical treatment on August 2, 2012, and August 6, 2012, because he was experiencing headaches. Radiological images were taken, and N.P. Tucker noted that Williams has a history of headaches. From the images, Tucker found,

"There is no fracture or acute bony abnormality. Mastoid sinuses appear clear. If additional imaging is desired, CT could be performed."

On August 17, 2012, at 8:30 a.m., CO Thomas Townsend and Joshua Williams had an altercation in the holding tank at Unit 29. Townsend had escorted Williams from the Unit 29 gym, where the inmates had just been placed while their unit was shaken down. As the inmates filed by several corrections officers during the shakedown, Williams realized that the last officer was Jasmine Hines, against whom he had filed a grievance. He complained that Hines had a conflict of interest due to the pending grievance. Townsend approached Williams and told him to get on the floor. Williams did not, however, obey the order; he did not move or respond in any way. When Williams refused to obey Townsend's order, he left and returned with Lt. Thigpen and told Williams he would force him to comply if he would not get down. Williams still refused to get down. Townsend then tussled with Williams, who still refused to comply with the order. When Williams regained his footing, he charged at Townsend, and Lt. Thigpen and Lt. Danny Harris got between the two. Thigpen told Williams that the gym was not the place to resolve the conflict and told him to go to the holding tank. Williams refused that order, as well; he still did not move. Thigpen and Townsend then forcibly escorted Williams to the holding tank, dragging him – still resisting – by his arms. Once inside the tank, Thigpen and Townsend were trying to put the uncooperative Williams into a cell. Thigpen then stepped out from between the two, and Townsend and Williams got into an altercation in which Townsend sustained a slight bruise to his face, and Williams sustained bruises on his face and neck, including a black eye. Thigpen was not injured in the altercation. Lt. Harris recorded Williams' injuries. Though Townsend submitted a rule violation report regarding the incident, Williams was found "not guilty" because the rule at issue required that Townsend sustain serious injury, and he did not.

Williams was taken to medical and treated with Tylenol and triple antibiotic ointment. He was x-rayed at the time, and the results were normal. On August 20, 2012, Williams requested medical care complaining of vision problems in his right eye. An eye exam revealed that he had 20/200 vision in his right eye, and 20/70 vision in his left. At his *Spears* hearing, Williams acknowledged that, though he had blurry vision following the incident, the problems later resolved. On August 24, 2012, Williams requested medical treatment, complaining of pain in his right shoulder. He was seen on August 27, 2012. That same day he requested medical treatment, complaining of swelling in his right foot, and medical personnel examined his foot. On August 30, 2012, Williams requested medical treatment, complaining of dry scalp that bled when he washed his hair. Medical personnel determined that the condition was too minor to warrant treatment. On September 6, 2012, Williams filled out a sick call request form seeking a change in his medication because he developed headaches after taking it. On September 14, 2012, Williams requested to have his teeth cleaned; he also complained of pain in his chest. He refused treatment on September 17, 2012. On September 22, 2012, Williams sought medical treatment for back pain, but he later refused any treatment for the condition. He again complained of back pain on October 1, 2012, but he refused the treatment offered the following day. On October 8, 2012, Williams complained of a cold and requested a flu shot. He received a flu shot on October 10, 2012. Williams again complained of back pain on October 22, 2012; he was examined the next day and was treated with ibuprofen. On November 2, 2012, Williams complained of swelling in his foot which he had hurt that day. He was treated with ibuprofen on November 5, 2012. He filled out another medical request form for his injured foot on November 7, 2012, and he was examined on November 9, 2012. He requested medical attention on November 27, 2012, for an injury to his knee; however, he refused treatment when it was offered the next day. He again requested treatment for his right knee on December 3, 2012, and again refused treatment for it. On December 15, 2012, Williams

again complained about back pain – stating that the pain began on August 17, 2012 (the date of the incident with the defendants in this case). Dr. N. Yousuf took three images of Williams' lumbar spine area, finding, "[n]o acute bony abnormality . . . and . . . little change since the previous study of April 2012. Minimal loss of disc height at L5 – S1 level is likely degenerative in nature and is unchanged. There is also mild osteoarthritis involving the sacroiliac joints."

### Williams' Claims

Williams claims that the defendant, Thomas Townsend, used excessive force against him. He also claims that medical personnel have not provided adequate medical treatment for his injuries.

### Excessive Force

In considering a claim that a prison official used excessive force against a prisoner in violation of the Eighth Amendment, a court must balance the constitutional rights of the prisoner with the needs of prison officials to effectively use force to maintain prison order. *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)); *see Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). To establish liability on the part of defendants the plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." *Id.* Factors to weigh when considering an excessive force claim include, but are not limited to, "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of the forceful response." *Rankin*, 5 F.3d at 107 n.5 (citation omitted).

A prisoner need not prove "significant" or "serious injury" in order to prevail in an Eighth Amendment claim of excessive force. *Hudson*, 503 U.S. at 7. "The absence of serious injury is

therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* A *de minimis* use of force, however, is insufficient to state a cognizable Eighth Amendment claim. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (citation omitted). Moreover, "[i]n cases post-*Hudson*, 'certainly some injury is still required.'" *Rankin*, 5 F.3d at 108; *see also Knight v. Caldwell*, 970 F.2d 1430 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S. Ct. 1298, 122 L. Ed. 2d 688 (1993). A single incident of force or a single blow is *de minimis* and thus does not violate the Eighth Amendment. *Jackson v. Colbertson*, 984 F. 2d 699, 700 (5th 1993).

The first factor does not weigh in Williams' favor, as his injuries were not serious. Though Williams was injured, his medical records show that the injuries were minor – bruises on his face and neck, including a black eye.

The second factor, the need to apply the force, also weighs against Williams, as he struck Townsend in the face during the altercation. Prison guards must maintain a safe and orderly environment – and must defend themselves and gain control of violent situations to prevent them from spiraling out of control. Townsend needed to use force to accomplish this objective.

The third factor, the relationship between the need for the use of force and the amount of force used, also weighs against Williams. He admitted at the *Spears* hearing that he initiated the incident by refusing to obey Townsend's order to get on the ground, tussling with Townsend, who was trying to physically gain Williams' compliance, then lunging toward and striking Townsend after regaining his footing. Townsend used enough force to put a quick end to the confrontation, which was rapidly

escalating, and he accomplished this objective with only minor injuries to himself and Williams. Had he permitted the disturbance to escalate further, requiring even more force to quell it, there would have been a much greater chance of someone sustaining a serious injury. For these reasons, the third *Ulmer* factor weighs against Williams.

The fourth factor, the level of threat Townsend reasonably perceived, also weighs against Williams, as he refused to obey an order then engaged in a fight with Townsend. To put the incident in context, one must note that Williams was an extremely confrontational and disruptive inmate at the time of the incident. Indeed, he maintained a belligerent attitude for the entirety of 2012. Williams was directly involved in some 38 incidents leading to Rule Violation Reports during 2012. He started a fire, threatened staff members five times, assaulted staff once, and screamed, yelled, cursed, started a ruckus, or otherwise caused problems dozens of times. He was also validated as a disruptive core member of a prison gang. Townsend was reasonable in believing that Williams' behavior posed a legitimate threat.

The fifth factor, Townsend's efforts to temper the amount of force, also weighs against Williams. In his complaint and at the *Spears* hearing, Williams describes the incident as a vicious attack, during which Townsend threw him to the ground and repeatedly punched and stomped him. Such an attack carried out by a grown man would almost certainly have resulted in serious physical injury to the prisoner. The medical records, however, reveal that Williams received only minor injuries (bruises to the face and neck) consistent with the force necessary to subdue an extremely unruly and uncooperative inmate. In sum, all of the *Ulmer* factors weigh against Williams' allegation of excessive force, and judgment will be entered in favor of the defendant as to this claim.

**Denial of Medical Treatment**

It is not clear whether Williams intended to seek relief for denial of adequate medical treatment, and he has not named any defendants against whom he could make such a claim. In any event, the facts of this case simply do not support such a claim. In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

As set forth above, the undisputed material facts show that Williams requested and received medical treatment for his various ailments many times, and his injuries have all resolved favorably. Also, he has not named any medical personnel as defendants. For these reasons, judgment will be entered in favor of the defendant as to this claim.

**Conclusion**

For the reasons set forth above, the motion [29] by the defendant for summary judgment will be granted and judgment entered in favor of the defendant.

**SO ORDERED**, this, the 8th day of January, 2015.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**